1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  SHARON G. BIRENBAUM
   Deputy Attorney General
6  State Bar No. 94925
    455 Golden Gate Avenue, Suite 11000
7  San Francisco, CA  94102-7004
   Telephone:  (415) 703-5870
8  Fax:  (415) 703-1234
   Email:  sharon.birenbaum@doj.ca.gov
9  Attorneys for Respondent

10              IN THE UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                  SAN FRANCISCO DIVISION

13

14  **STEPHEN CRUMP,**                              C 07-3707 CRB

                                    Petitioner,
15
                    **v.**
16
    **ALAMEDA COUNTY SUPERIOR COURT, et al.,**
17
                                    Respondent.
18

19

20  **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PETITION
    FOR WRIT OF HABEAS CORPUS**

21

22

23

24

25

26

27

28

1

<div align="center">**TABLE OF CONTENTS**</div>

2                                                                                              **Page**

3  INTRODUCTION                                                                                      1

4  STATEMENT OF THE CASE                                                                             2

5  STATEMENT OF FACTS                                                                                2

6  STANDARD OF REVIEW                                                                                5

7  ARGUMENT                                                                                          5

8          THE    STATE    COURT'S    REJECTION    OF
           PETITIONER'S CLAIM THAT HE WAS DENIED DUE
9          PROCESS BECAUSE THE TRIAL COURT FAILED
           TO HOLD A COMPETENCY HEARING WAS NOT
10         CONTRARY    TO    OR    AN    UNREASONABLE
           APPLICATION OF SUPREME COURT PRECEDENT5

11
        A.  Background                                                                               5
12
            1.  Preliminary Hearing                                                                  7
13
            2.  Competency Finding                                                                   9
14
            3.  Trial                                                                                9
15
            4.  Sentencing Hearing                                                                   21
16
        B.  The Court Of Appeal's Ruling                                                             23
17
        C.  The State Court Ruling Was Not Contrary To Or An
18          Unreasonable Application Of Supreme Court Precendent                                     24

19  CONCLUSION                                                                                       33

20

21

22

23

24

25

26

27

28

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-3707 CRB

i

1

**TABLE OF AUTHORITIES**

2

**Page**

3    **Cases**

4    *Amaya-Ruiz v. Stewart*
     121 F.3d 486 (9th Cir. 1997)                                            25-27
5
     *Batson v. Kentucky*
6    476 U.S. 79 (1986)                                                        31

7    *Boag v. Raines*
     769 F.2d 1341 (9th Cir. 1985)                                          25, 31
8
     *Burket v. Angelone*
9    208 F.3d 172 (4th Cir. 2000)                                              25

10   *Capoperdo v. Demosthenes*
     37 F.3d 504 (9th Cir. 1994)                                               25
11
     *Cooper v. Oklahoma*
12   517 U.S. 348 (1996)                                                       25

13   *Davis v. Woodford*
     384 F.3d 628 (9th Cir. 2004)                                      25, 26, 27
14
     *De Kaplany v. Enomoto*
15   540 F.2d 975 (9th Cir. 1976)                                              31

16   *Dennis v. Budge*
     378 F.3d 880 (9th Cir. 2004)                                              26
17
     *Drope v. Missouri*
18   420 U.S. 162 (1975)                                                       25

19   *Dusky v. United States*
     362 U.S. 402 (1960)                                                       25
20
     *Faretta v. California*
21   422 U.S. 806 (1975)                                                        8

22   *Godinez v. Moran*
     509 U.S. 389 (1993)                                                   24, 25
23
     *Lockyer v. Andrade*
24   538 U.S. 63 (2003)                                                         5

25   *Lyons v. Luebbers*
     403 F.3d 585 (8th Cir. 2005)                                              31
26
     *Maggio v. Fulford*
27   462 U.S. 111 (1983)                                                       26

28

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-3707 CRB

ii

**TABLE OF AUTHORITIES  (continued)**

Page

*Medina v. California*
505 U.S. 437 (1992)                                                25

*Moran v. Godinez*
57 F.3d 690 (9th Cir. 1994)                                        26

*Pate v. Robinson*
383 U.S. 375 (1966)                                            24, 25

*People v. Marsden*
2 Cal.3d 118 (1970)                                                8

*People v. Wheeler*
22 Cal.3d 258 (1978)                                              31

*Reynolds v. Norris*
86 F.3d 796 (8th Cir. 1996)                                       25

*Spencer v. Kemna*
523 U.S. 1 (1998)                                                  2

*Torres v. Prunty*
223 F.3d 1103 (9th Cir. 2000)                                     26

*United States v. Lewis*
991 F.2d 524 (9th Cir. 1993)                                      26

*Vogt v. United States*
88 F.3d 587 (8th Cir.1996)                                        31

*Woodford v. Visciotti*
537 U.S. 19 (2002)                                                 5

**Statutes**

California Penal Code
        § 422                                                      1
        § 1367                                                     6
        § 1368                                                  6, 26
        § 4011.6                                                  6

United States Code, Title 28
        § 2254(a)                                                 2
        § 2254(d)(1)                                              5
        § 2254(d)(2)                                             26
        § 2254(e)(1)                                             26

**Other Authorities**

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)      5

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-3707 CRB

iii

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  SHARON G. BIRENBAUM
   Deputy Attorney General
6  State Bar No. 94925
    455 Golden Gate Avenue, Suite 11000
7  San Francisco, CA 94102-7004
   Telephone: (415) 703-5870
8  Fax: (415) 703-1234
   Email: sharon.birenbaum@doj.ca.gov
9  Attorneys for Respondent

10           IN THE UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                SAN FRANCISCO DIVISION

13
   STEPHEN CRUMP,                          C 07-3707 CRB
14
                          Petitioner,      **MEMORANDUM OF POINTS**
15                                         **AND AUTHORITIES IN**
              v.                           **OPPOSITION TO PETITION**
16                                         **FOR WRIT OF HABEAS**
   ALAMEDA COUNTY SUPERIOR COURT, et al.,  **CORPUS**
17
                          Respondent.
18

19

20                     **INTRODUCTION**

21        Petitioner was convicted by jury in Alameda County of two counts of making criminal

22  threats pursuant to California Penal Code section 422. He asserts that he was denied due process of

23  law because the trial court failed to hold a competency hearing. There is no merit to his contention.

24  ///

25  ///

26  ///

27

28

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-3707 CRB

1

## STATEMENT OF THE CASE

On April 18, 2005, the Alameda County District Attorney charged petitioner with two counts of criminal threats pursuant to Penal Code section 422.  CT 68-70.[1/]

Jury trial began with in limine motions on June 15, 2005.  CT 100.  On June 27, 2005, the jury found petitioner guilty as charged.  CT 137, 139, 170-71.

On August 5, 2005, the trial court sentenced petitioner to a total prison term of three years, eight months.  CT 200-02.

Petitioner appealed (Exhs. C, D, and E), and in an unpublished opinion filed on February 27, 2007, the California Court of Appeal affirmed the judgment.  Exh. F.

Petitioner filed a petition for review (Exh. G), which the California Supreme Court denied on May 11, 2007.  Exh. H.

Petitioner filed the instant petition on November 16, 2007.[2/]

## STATEMENT OF FACTS

Lee Ann Ferguson was the manager for Alameda County District 1 Supervisor Scott Haggerty.  RT 39.  On the morning of August 9, 2004, Ferguson was opening office email when she discovered an email threatening Supervisor Haggerty.  RT 39.  The email was sent August 9, 2004, at 9:30 a.m. from "CliffPimp" at Cliff6235@Yahoo.com.  It was sent to District1@ACGov.org, which was Supervisor Haggerty's office mailbox.  RT 40.  The subject line of the email read, "We are going to kill your fucking ass, Mr. Scott Haggerty."  RT 41.  The text of the email read as follows:

> You do not know me but I go by the name of Cliff.  And about three years – and about three years and you and your staff, including Sheriff Charles C. Plummer, with the judge of course, and sent me to prison on drug – drugs charges.  So now it's pay back

---

1. "CT" refers to the clerk's transcripts of petitioner's state court trial, lodged with this court as Exhibit A.  "RT" refers to the reporter's transcripts of petitioner's state court trial, lodged with this court as Exhibit B.  Unless otherwise noted, statutory references are to the California Penal Code.

2. Petitioner has been released from prison and is currently on parole.  As he was in constructive custody of the state at the time he filed this petition, he has satisfied the custody requirement set forth in 28 U.S.C. § 2254(a).  *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998).

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-3707 CRB

2

1   time. I'm going to kill you, your board members and especially that racist mother fucker
    Charles Plummer. And I dare you to send your punk-ass sheriffs over to my house.

2

3   Look, you fucker, Mr. Scott Haggerty, I'm at 6235 Avenal Avenue in Oakland and
    I'll, me and my 415 crew, be driving my GMC truck, license number 1X74475. And I'm
    even bold to tell you my license. And we are going to kill all of you, all of your mother
4   fucking staff. Then I'm going to make you and Charles Plummer suck each others dicks.
    Then you're going to suck my dick. I'm going to make you pay for what you have done
5   to me, you fucking asshole, and I hope you and your staff get this message.

6   So watch your mother fucking back. And you can tell that punk mother fucker
    Charles Plummer that I will continue to sell dope from my house and his punk ass sheriffs
7   can't do shit about it.

8   RT 41.

9   Ferguson called Supervisor Haggerty, and read the email to him. He told Ferguson to call

10  Sheriff Plummer. She called Plummer, read the email to him, and sent him a copy. RT 41-42.

11  Scott Haggerty testified that the email made him scared and nervous. He was concerned

12  for the safety of his children, and obtained a concealed weapon permit to protect himself and his

13  family. The Livermore police provided surveillance on his home. RT 49-51. Haggerty had never

14  heard of Steve Crump, and was never involved in a drug prosecution. RT 51.

15  Alameda County Sheriff Charles Plummer received a call from Ferguson on August 9,

16  2004, about an email in which he and Supervisor Haggerty were threatened. Although he had

17  received death threats before, this one concerned him more than any of the others. RT 127-28. He

18  took the threat seriously, and kept his gun between his legs when he was driving so that it would be

19  easily accessible. RT 128-29.

20  Alameda County Sheriff Detective Ed Chicoine attempted to find the address listed in the

21  email – 6235 Avenal in Oakland. He and his partner could not find a house with that address.

22  However, there was a gray house without an address in the area where such an address might be

23  located. A GMC truck parked in the driveway of that house had the same license plate number as

24  the one referenced in the email. It appeared someone was either moving into or out of the house.

25  Detective Chicoine knocked on the door, but no one answered. RT 61-62.

26  There was a man sitting outside at the house next door, and Detective Chicoine asked if

27  the gray house was 6235 Avenal, and he said it was. RT 62. He also said that he thought the person

28

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-3707 CRB

3

1  who lived there was named "Cliff." RT 64. Detective Chicoine identified the man he was talking

2  to as petitioner. RT 64-65. After a while, petitioner "shut the conversation down" by saying he did

3  not actually live in the house where he was sitting. RT 65. Chicoine later learned that the house

4  petitioner identified as 6235 Avenal was really 6231 Avenal. RT 65.

5      Eventually, the person who owned the gray house in question came home and was very

6  cooperative. RT 67-68. He did not understand what was going on; he said that he did not have any

7  issues with Supervisor Haggerty or Sheriff Plummer. He explained that he was in the process of

8  moving into the house, and had not yet put up the number on the house. Detective Chicoine asked

9  if someone would want them to believe he had issues with the sheriff, and the man pointed to the

10  house where petitioner had been and said, "Hey, my neighbors." RT 68. Detective Chicoine

11  concluded that he was not involved in the email. RT 70. He was unable to find an address of 6235

12  Avenal; to his knowledge, no such address existed. RT 70-71.

13      Alameda County Deputy Sheriff Greg Swetnam worked in the high tech crime

14  investigations unit. RT 72. Through his investigation, he determined that the email had been sent

15  from a computer at the Private Industry County Work Force Program (PIC) in Oakland. RT 76-81.

16  PIC maintains computers the public can use to search for jobs. RT 89.

17      PIC coordinator Mario Davis explained that there was a help desk as one entered the

18  office. Clients had to sign a clipboard which showed the time that he or she was assigned a

19  computer; each person is allowed to use the computer for one hour. A client may request a particular

20  computer. RT 135-137. Davis recalled that on August 9, 2004, petitioner entered the office and

21  forcefully pushed past other clients, knocking down a lady. The receptionist asked Davis to keep

22  an eye on petitioner because he seemed agitated. RT 138. Petitioner had a history at PIC of being

23  a little agitated – he talked a lot, threatened a couple of staff members at another office, and had been

24  aggressive toward other clients and staff members. RT 139.

25      Petitioner was the first person to sign the log on August 9, 2004. The log showed that

26  petitioner used computer number 17 between 9:00 and 10:00 that morning. RT 139-40. Davis

27  identified petitioner in a photographic lineup as the person he saw that morning, and at trial

28

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-3707 CRB

1  specifically remembered seeing petitioner at that computer. RT 142-46.

2       Alameda County District Attorney Inspector Kyle Ritter, an expert in forensic computer

3  science, went to the PIC office with Deputy Sheriff Swetman and removed the hard drive from

4  computer number 17. RT 148-150. He determined that the email in question was generated on that

5  computer on August 9, 2004, at 9:29 a.m. RT 154-56, 160-63, 166-67, 173.

6       It was stipulated that petitioner had never been arrested for a drug-related offense, nor had

7  he ever been convicted or sent to prison on drug charges. RT 199.

8  <center>**STANDARD OF REVIEW**</center>

9       This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

10  (AEDPA), which imposes a "highly deferential" standard for evaluating state court rulings and

11  "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537

12  U.S. 19, 24 (2002) (per curiam). Under AEDPA, the federal court has no authority to grant habeas

13  relief unless the state court's ruling was "contrary to, or involved an unreasonable application of,"

14  clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). A decision constitutes an

15  unreasonable application of Supreme Court law only if the state court's application of law to the

16  facts is not merely erroneous, but "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75

17  (2003). The petitioner bears the burden of showing that the state court's decision was unreasonable.

18  *Visciotti*, 537 U.S. at 25.

19  <center>**ARGUMENT**</center>

20  **THE STATE COURT'S REJECTION OF PETITIONER'S CLAIM**
21  **THAT HE WAS DENIED DUE PROCESS BECAUSE THE TRIAL**
     **COURT FAILED TO HOLD A COMPETENCY HEARING WAS NOT**
     **CONTRARY TO OR AN UNREASONABLE APPLICATION OF**
22  **SUPREME COURT PRECEDENT**

23       Petitioner maintains that he was denied due process because the trial court failed to hold

24  a competency hearing. He has failed to state a claim warranting habeas corpus relief.

25  **A. Background**

26       The prosecutor filed the original complaint in the instant case on August 12, 2004. CT 1-

27  2. An amended complaint was filed on August 18, 2004. CT 3-5. Petitioner was arraigned on

28

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-
3707 CRB

5

1    March 22, 2005.  See RT of 3/22/05.  The preliminary hearing was held on April 5, 2005 (CT 6 *et*

2    *seq.*), and the district attorney filed the information on April 18, 2005.  CT 68.  There is nothing in

3    the record on appeal about what occurred between August 18, 2004, and March 22, 2005.  However,

4    the record does contain two psychologist reports requested in the instant case in October 2004,

5    pursuant to California Penal Code sections 1367 and 1368, which provide the procedures to follow

6    if there is a doubt about the defendant's competency.

7        Dr. Gerald A. Davenport wrote one of the reports, dated October 11, 2004.  The report was

8    directed to the Alameda County Superior Court, referencing the instant case, with the subject matter

9    entitled, "Determination of Mental Competency under Section 1368 of the California Penal Code."

10   Dr. Karen Franklin wrote the second report, dated October 13, 2004, listing the court date as October

11   22, 2004.  Exh. I.  Dr. Franklin stated the referral issue as follows:

12       Steven Crump was referred for a competency evaluation pursuant to Penal Code § 1367
         et seq.  He is charged with two felony counts of P.C. § 422, criminal threats, for allegedly
13       e-mailing threats to Sheriff Charles Plummer and Alameda County Supervisor Scott
         Haggerty on August 9, 2004, in which he accused them of being responsible for his prior
14       imprisonment.

15   The report indicates that the order appointing alienists was dated 8/23/2004.  Exh. I.  The record on

16   appeal did not contain a copy of the above referenced order, nor any documentation regarding the

17   referenced October 22, 2004, hearing.

18       Both psychologists stated that petitioner remained mute during their examinations, and

19   both stated that as a result they were unable to make a determination of petitioner's competency.

20   Exh. I.  Dr. Franklin concluded there were three possibilities underlying petitioner's muteness: it

21   could be a symptom of an underlying mental disorder, it could be due to anger and willful refusal

22   to cooperate, as opined by the 4011.6 evaluator,[3] or it could be part of a malingered psychosis,

23

24   _____

25       3.  On page two of her report, Dr. Franklin stated that she had access to a report dated August
     19, 2004, pursuant to Penal Code section 4011.6, which permits a 72-hour hold for mental evaluation
26   of a detained person who may be mentally disordered.  That report stated petitioner received
     psychiatric treatment in 1997 and 1999 through the Alameda County Criminal Justice Mental Health
27   Program, and was diagnosed with borderline intellectual functioning and adjustment disorder with
     disturbance of conduct.  Exh. I.

28

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-
3707 CRB

6

1  noting that the fact that petitioner does occasionally talk "is suggestive of malingering . . ." Exh. I,

2  Dr. Franklin's report, page 3.

3      The state court record did not contain information on any subsequent hearings until the

4  arraignment on March 22, 2005. At that hearing, defense counsel stated that the plea "will be not

5  guilty." 3/22/05 RT 1. The following then occurred:

6          THE DEFENDANT: No, I never entered a plea. You and the judge and the DA are
           setting me up for losing the case. I never entered a plea, and I want the record to reflect
7          that so I can put in for my appeal.

8          THE COURT: Mr. Crump.

9          THE DEFENDANT: I never entered a plea. I want the record to reflect I never
           entered a plea. You set me up for losing the case. I never entered a plea. I want the
10         record to reflect that because my constitutional rights are being violated.
           [Whereupon, the defendant was escorted out of court.]

11

12  3/22/05 RT 1. Defense counsel put on the record that petitioner refused to enter a plea. The court

13  noted on the record that petitioner was interrupting the proceedings and removed from the

14  courtroom, and that it entered a plea on his behalf of not guilty. 3/22/05 RT 1-2.

15      The next hearing noted in the record is the preliminary hearing on April 13, 2005, at which

16  petitioner was held to answer. CT 6 *et seq.* On April 21, 2005, petitioner again refused to enter a

17  plea, and the court entered a plea of not guilty. CT 83.

18      **1. Preliminary Hearing**

19      At the beginning of the preliminary hearing, petitioner asserted that he never agreed to

20  enter a plea, and he never told his attorney he wanted to enter a not guilty plea. He complained that

21  his attorney acted unlawfully in entering such a plea without consulting him. CT 8. The court tried

22  to get petitioner to state his name, but petitioner continued stating that he never spoke to counsel,

23  and that he requested but never received transcripts from the March 22 arraignment. Petitioner

24  wanted the record to reflect that he was not incompetent, he had never been incompetent, and he did

25  not have a medical history of being incompetent. He further stated he did not give up any of his

26  constitutional rights, and he would not take or agree to any plea bargain. He wanted to be taken to

27  trial so he could appeal his case. CT 9. Petitioner concluded by saying that he meant no disrespect

28

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-3707 CRB

7

1  to the court, but he "had to say what [he] had to say" because his attorney lied to him. CT 10.

2      The court asked if he was Mr. Crump. Petitioner responded, "Yes, I am. For the record

3  I am Mr. Crump." CT 10. The court stated it had to announce his case. Petitioner asked how the

4  court could announce the case when he never entered the plea. When the court called the case, and

5  Mr. McDougall stated he was representing petitioner, petitioner stated he did not want Mr.

6  McDougall to represent him because he was a liar. The court asked if he would like a new attorney,

7  and petitioner stated he wanted to be his own attorney. CT 10. Petitioner asserted he did not trust

8  the judges, the district attorneys, and the public defenders because they worked together to get

9  African-Americans convicted. CT 10-11. Petitioner claimed that a "black man don't have no rights

10  in a white court system such as Alameda County Superior Court." CT 12.

11      The court gave petitioner a form for representing himself, but petitioner took the *Faretta*

12  [*Faretta v. California*, 422 U.S. 806 (1975)] waiver form, crumbled it up, and threw it on the

13  ground.  CT 12-13.  The court ruled that petitioner waived any right under *Faretta* to self-

14  representation because he refused to enter a knowing, voluntary, and intelligent waiver of his right

15  to representation. CT 13. The court told petitioner it found he waived his right under *Faretta*, and

16  petitioner asserted he did not waive anything, then stated, "And then when I go to trial, I'm going

17  to let the jurors know how crooked and corrupted this court system is, so when you set me up to lose

18  my case, I want to appeal my case." CT 14.

19      The trial court held a *Marsden* [*People v. Marsden*, 2 Cal.3d 118 (1970)] hearing to

20  determine if petitioner should have a new attorney. CT 16. The court apparently denied the motion.

21  Afterwards, before the first witness was called, the court asked if petitioner wanted to sit next to his

22  attorney, and petitioner replied it was not his attorney and he would not sit next to him. CT 18.

23      During the direct examination of Deputy Sheriff Swetnam, petitioner interrupted several

24  times, asking if his name was on the email in question (CT 20), asking who "Cliff" was (CT 22),

25  denying that he was sitting on the porch of the house next door to the suspect gray house (CT 36),

26  stating that it was a lie that he used computer (17 CT 38), and asking why the witness did not arrest

27  him when he was sitting on the porch. CT 46-47. The court finally excluded petitioner from the

28

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-
3707 CRB

8

1  proceedings. CT 42. Petitioner began banging on the door, saying from inside the holding cell, "No,

2  it's all set up for me to lose. If I was supposed to be on the porch, why didn't I get arrested at that

3  time? Who is Cliff? Where is my name at? I don't want you representing me." CT 48.

4      **2.  Competency Finding**

5      On May 9, 2005, the prosecutor requested a continuance of trial  CT 84, which the court

6  granted on May 10, 2005. CT 87. The next noted hearing was on June 13, 2005. The clerk's

7  minutes state that "defense counsel's request for 1368 PC referral is denied. *Previous 1368 PC*

8  *reports are used by the court. The court finds the deft competent.*" CT 88, emphasis added. It then

9  states that the matter is assigned to Judge Rolefson for jury trial. CT 88.

10      **3.  Trial**

11      At the pretrial conference on June 13, 2005, petitioner answered to his name, and listened

12  to the court introduce itself and explain the proceedings. 6/13/05 RT 1. Petitioner told the court that

13  he had some questions. 6/13/05 RT 1-2. The court stated that it wanted to go over some business,

14  and petitioner said okay. The following exchange took place:

15      THE COURT:  One of the things I want to ask about – you're in custody. You're
16  wearing jail clothes. Do you have clothes out there at the jail to wear during the course
   of the trial?

17      THE DEFENDANT: Before I answer that, there's some questions I have to ask. Not
18  to be disrespectful, sir. Is this on the court record?

19      THE COURT:  This is.

20      THE DEFENDANT:  I had my arraignment on March 22nd, 2005, in Department
   115, in the presence of Judge Winifred Smith. Mr. McDougall, who was the attorney at
21  the time, said – and before I continue, I would like to have copies of the transcripts from
   today. When I was in court on March 22nd, 2005, Department 115, it was in the presence
22  of Judge Winifred Smith.

23      THE COURT:  All right.

24      THE DEFENDANT:  Mr. McDougall had lied in court, saying that we enter of plea
   of not guilty, and I never even spoke to Mr. McDougall. And then I said on court record
25  that I never said that I was going to enter a plea, and that I wanted the record to reflect that
   I never entered the plea.

26      THE COURT:  Okay. All of that –

27      THE DEFENDANT:  I'm not finished.

28

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-3707 CRB

9

1  THE COURT: Yes, you are, because it's not really relevant to me now, and I'll tell you why. Number one -

2  THE DEFENDANT: But I shouldn't have had the preliminary hearing, and I shouldn't have any trouble. My rights are being violated.

3

4  THE COURT: But did you –

5  THE DEFENDANT: *I'll bring it up to the jury's attention.*

6/13/05 RT 2-3, emphasis added.

6
7  After this, petitioner stated that he was going to wear his jail clothes. The trial court advised against it. The court also advised petitioner that to ensure a fair trial, he should allow his

8  shackles to be removed. Petitioner stated his belief that he was not going to have a fair trial. He

9  complained that when he asked for his transcripts, he was told they did not exist and that was a lie.

10  Petitioner stated, "I'm looking at the court reporter right in her face when I had my arraignment on

11  the 22nd of March, and I said, 'I want the record to reflect I never entered a plea.' And then you

12  [apparently defense counsel] sent me a letter. When I asked you about the transcripts, you lied and

13  said that the transcripts didn't exist. So that told me that you, the D.A., and the judge are all working

14  together to set me up for me to lose my case." 6/13/05 RT 3-4.

15  The trial court explained petitioner's rights to him, explained that it wanted both sides to

16  have a fair trial and that petitioner needed to conduct himself appropriately in court. Petitioner asked

17  if he could take the stand. The trial court told him that was a decision between him and his lawyer.

18  Petitioner then replied, "Well, see I don't mean to cut you off. That's the reason why this attorney

19  has said – he falsely and intentionally said that I have a mental problem, because he doesn't want me

20  to take the stand and talk. Now, I have a constitutional right to defend myself, and tell the courts my

21  side of the story. He doesn't want me to tell my side of the story. *That's why he tried to lie, to say*

22  *I have a mental problem.* Also, at the same time, not to be repetitive, he doesn't want to give me my

23  transcripts from my arraignment, which proves a plea was never entered." 6/13/05 RT 7, emphasis

24  added.

25  Petitioner maintained that his lawyer was not "representing [him] to the fullest of his

26  capability as an attorney should," pointing out again he had not been provided with transcripts of his

27  arraignment, and noted that when he "fought [his] case in '97, [he] had got [his] transcripts from his

28

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-3707 CRB

1 arraignment." 6/13/05 RT 8.[4/] The court explained that no judge had ordered the transcripts of the

2 arraignment. Petitioner complained that the court was violating his rights because he never entered

3 a plea, and that is why they were not giving him the transcripts. The trial court told petitioner he

4 needed to stop focusing on that. Petitioner stated all he asked for was his transcripts, that he did not

5 see a problem with that, and that when he loses his case at trial, he was sure that the transcripts

6 would be prepared. 6/13/05 RT 9.

7     The court turned to whether petitioner's shackles should be removed. Petitioner stated that

8 he did not want the shackles removed "[f]or the simple fact, I know I'm not getting a fair trial. It's

9 already set up for me to lose. This attorney is not giving me my transcripts." 6/13/05 RT 10.

10 Petitioner explained that his prior attorney had given him the transcripts from the preliminary

11 hearing, but not the arraignment. "That's why I want to be in shackles, because it's already set up

12 for me to lose, so I don't have nothing to lose, but to put in my appeal, and I will be appealing my

13 case." 6/13/05 RT 10. The trial court asked petitioner if he was going to complain if the court

14 ignored his request and unshackled him, and petitioner responded , "Yeah, I'll explain to the jurors

15 . . ." 6/13/05 RT 11. Petitioner did not want his attorney filing any motions for him, stating his

16 belief he already lost the trial. 6/13/05 RT 11-13.

17     The trial court stated it was concerned because it heard that Judge Reardon had to send

18 petitioner out of the courtroom because he could not "get a word in edge wise with you, that you

19 were talking loudly and continuously in there, and somebody even described it as yelling . . . So I'm

20 concerned about how you're going to act in the courtroom on any given day." 6/13/05 RT 14.

21 Petitioner replied, "I can conduct myself in a courtroom to the best of my ability. I don't have no

22 reason to get loud or to get mad. . . . It's just that I don't like it when an attorney and the courts is

23 trying to play me for a fool, and try to play with my intelligence when I just asked for certain things.

24 And then they're looking at me like – for example, when I was in court today, this attorney is trying

25 to tell the courts that I have a mental problem, and I know I don't have a mental problem, and I never

26

27     4. Petitioner had previously been convicted of assault with a deadly weapon. That
conviction was overturned on appeal. See CT 211; 1 RT 8-9.

28

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-3707 CRB

11

1  did have a mental problem. And the reason why he said that is because it's a tool that's used against

2  me to be found guilty at trial. That's why I know I'm not going to get no fair trial." 6/13/05 RT 14-

3  15. The court noticed that petitioner reacted "pretty strongly to [defense counsel] whenever he

4  attempts to speak on your behalf . . ." 6/13/05 RT 15. Petitioner told the court not to have defense

5  counsel talk to him, that he "ain't acting in my behalf." 6/13/05 RT 16.

6       The court warned petitioner that if he was disruptive in court, it would have to exclude

7  him. 6/13/05 RT 16. Petitioner again expressed the fact that he did not like his attorney, "He's not

8  representing me. A real attorney would take the time out to go over the case. A real attorney will

9  say something to the effect that, well, I don't think that you did it, but I'll try to help you the best way

10 I can anyway, and other sort of things. This attorney is not doing that. This attorney lies. This

11 attorney was withholding evidence." 6/13/05 RT 17. Petitioner again stated he believed he was

12 being set up to lose, not only by his attorney, but the prosecutor and court. 6/13/05 RT 17. Trial

13 counsel explained that petitioner did not believe he could get a fair trial in Alameda County, because

14 the victims were elected officials of that county. Petitioner chimed in, "There's your proof. They

15 are employees here." 6/13/05 RT 18.

16      When the court stated they were going to adjourn for the day, petitioner told the court,

17 "Thank you, Judge Rolefson, for listening to what I had to say. If I sound loud, I do apologize for

18 that, but due to the fact of what took place from the arraignment up to now, I had to say what I had

19 to say . . . So if I had disrespect you in any way, I apologize, because that's not my intent." 6/13/05

20 RT 20.

21      On June 15, 2005, petitioner said that he did not want to sit next to his attorney. Petitioner

22 stated that he wanted the record to reflect that he did not have a mental problem, that he was "real

23 capable and able to take the stand. . . ." 6/15/05 RT 1. The court then heard in limine motions.

24 Petitioner did not interrupt. 6/15/05 RT 2-9. The court told petitioner it wanted to revisit the

25 question of whether he would wear jail clothes and be shackled. Petitioner refused to respond to the

26 court's questions. 6/15/05 RT 9-11. The court ordered the shackles removed unless they had to fight

27 petitioner about it. 6/15/05 RT 11. Defense counsel stated that he believed petitioner understood:

28

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-3707 CRB

1        MR. BRYDEN (DEFENSE COUNSEL]: I think Mr. Crump understands the court

2  is addressing him, and he understands what the court is saying and has no objection that's the courts order.

3        THE COURT: *I know Mr. Crump understands exactly what I'm saying. He's made*

4  *that clear to me.*

5  6/15/05 RT 11, emphasis added.

6        The court assured petitioner that if he wanted to testify, he would have that opportunity.

7  6/15/05 RT 11-12. Petitioner responded that his attorney did not want him to testify because he did

8  not want the jurors to know what he had to say. He again asserted he never entered a plea at his

9  arraignment and that counsel would not give him the transcripts. 6/15/05 RT 12-13. The court told

10  petitioner not to talk while the court was talking. Petitioner continued complaining that he did not

11  have the transcripts. 6/15/05 RT 13. The court told petitioner he had already been over that and

12  petitioner needed to stop talking about it. Petitioner kept saying he would testify. 6/15/05 RT 14-15.

13  The court told petitioner he was in danger of being excluded every time he opened his mouth.

14  Petitioner responded, "That's your decision. . . . I'm not giving up none of my rights." 6/15/05 RT

15  15.

16        The court asked petitioner again if he wanted the shackles on, and petitioner said yes. He

17  told the court, "The reason you don't want me to have shackles on, because it would affect the jurors,

18  and that would be grounds for reversal on my appeal." 6/15/05 RT 16. Petitioner said it did not

19  make any difference since he was going to be found guilty anyway since it was "already set up for

20  me to lose." 6/15/05 RT 16.

21        Jury selection began on June 20, 2005. Petitioner refused to have his shackles removed,

22  and refused to respond to the court's questions. 6/20/05 RT 23-24. The court stated that it would

23  not order that the officials fight petitioner to remove the chains. 6/20/05 RT 24-25. Petitioner did

24  not say anything when the court explained the case to the prospective jury, read the charges,  and

25  began explaining procedures and burden of proof. 6/20/05 RT 26-43. It was only when the court

26  was explaining that the defense had no burden of proof and that petitioner does not have to testify

27  that petitioner stated, "I want to testify . . . I'm going to testify now or later. They're setting me up

28

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-3707 CRB

13

1  to lose my case. A plea was never entered." 6/20/05 RT 43. The court explained to the jury that

2  they could not find petitioner guilty unless it was proved beyond a reasonable doubt. Petitioner then

3  said, "Could you please find me guilty?" The court told petitioner not to interrupt, and petitioner

4  said, "Please find me guilty, because it's set up for me to lose." 6/20/05 RT 43. The court warned

5  that if petitioner interrupted again he would be removed. 6/20/05 RT 43-44.

6          The court continued to go over trial procedures. When the court was again explaining that

7  the jury could not consider it if petitioner elected not to testify, petitioner asserted he was going to

8  testify. The court warned petitioner not to interrupt, but petitioner continued to do so and the court

9  ordered him removed. Petitioner stated before leaving, "It's all set up for me to lose. The judge, the

10  D.A., all of them work together to get you convicted." 6/20/05 RT 49. The trial court removed

11  petitioner from the courtroom. 6/20/05 RT 50.

12          Toward the end of the proceeding and outside the presence of the jury, the court brought

13  petitioner back into the courtroom. Petitioner immediately stated that he did not enter a plea at his

14  arraignment. 6/20/05 RT 98. The trial court told petitioner he needed to be quiet, but petitioner

15  continued talking continuously, saying he was going to appeal his case. 6/20/05 RT 98. The trial

16  court noted that petitioner was refusing to be quiet, and was doing the same thing he did before when

17  he was removed. Petitioner stated, "If he wasn't violating my constitutional rights, then I wouldn't

18  have to say what I'm saying." 6/20/05 RT 98-99. After several attempts to get petitioner to be quiet,

19  the court told petitioner, "I'm going to bring you back down here tomorrow morning, bring you back

20  into the courtroom." 6/20/05 RT 99-100. Petitioner responded, "I'm going to say the same thing

21  tomorrow. Now you want to put me out? You can put me out, too. . . . You violated my rights. I

22  never even entered a plea." 6/20/05 RT 100. Petitioner was again removed from the courtroom.

23  6/20/05 RT 100.

24          The next day, the defendant was brought into the courtroom. Petitioner continued along

25  the same lines – that he was not getting a fair trial, that he wanted to appeal, that he was being set

26  up to lose his case, that he never entered a plea, and that he was being deprived of the transcripts of

27  the arraignment. 6/21/05 RT 105-106. The court again had petitioner removed. 6/13/05 RT 106-

28

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-3707 CRB

14

1   107. Defense counsel suggested that if the court had assured him that if he were convicted, he could

2   file an appeal and that all transcripts would be provided, it was possible petitioner would have

3   become calmer. 6/13/05 RT 107. However, counsel did not disagree with the court's description

4   of petitioner's behavior, namely "talking and ultimately yelling at [the court], non-stop." 6/21/05

5   107. The court stated that it would bring petitioner back the next morning to see if he had a change

6   of heart. 6/13/05 RT 109.

7           The next day, June 22, the trial court brought petitioner back into court, and explained they

8   were still picking a jury. The court asked petitioner if he could assure it he would not engage in the

9   same disruptive behavior. Petitioner denied he was being disruptive, claiming he was just trying to

10  get transcripts from his arraignment. He also told the court that his rights were being violated, and

11  that when the jury came in, he was going to tell them again, "Please find me guilty so I can appeal

12  my case." 1 RT 1-3. The court told petitioner that it was going to give him a chance to return to

13  court if he would be quiet and courteous. Petitioner responded, "so you're saying, what you're

14  saying, in general, indirectly is that I can go to trial without having to enter a plea at my arraignment?

15  Is that what you're saying?" The court stated it just wanted petitioner to answer its question.

16  Petitioner replied, "I'm answering your question. You're saying I can go to trial without having to

17  enter a plea at my arraignment? Is that the reason why? That's the reason why you're not giving me

18  my transcript?" 1 RT 4-5. The court continued to ask petitioner if he would assure it he was not

19  going to be disruptive. Petitioner continued to deny he was disruptive, claiming that all he asked for

20  were the transcripts from the arraignment, that he never entered a plea at his arraignment and should

21  not be at trial, and that he was being set up to lose his case. 1 RT 4-5.

22          After asking petitioner several more times if he was going to be disruptive, and petitioner

23  making the same assertions as above, the trial court again excluded him from the courtroom. "The

24  defendant is refusing to answer my question. Therefore, I will -- we're going to maintain the same

25  posture we were in before. He's excluded from the courtroom, because I am convinced, particularly

26  in view of his conduct yesterday morning, that we're going to see more of the same as soon as that

27  jury comes back in here." 1 RT 5-6.

28

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-3707 CRB

15

1    After hearing from both defense counsel and the prosecutor, the court concluded:

2    It's a Catch-22 for me. So I'm going to choose the lesser of two evils, particularly
3    in view of his failure, his refusal to answer my questions directly here. And, *in my
     opinion, he was playing games with me.*

4    *I also believe that he is doing this in significant part intentionally to create an
     appellate issue.* We know that he's been – he's been to trial before. He's been convicted
5    in the case in this county, it went up on appeal, and it got reversed. So he's seen what
     creating issues can do.
6

7    And I'm convinced he's not dumb *and he's not crazy. I think this is calculated to
     create issues here. And I think that his playing games with the plea is all part of that.*
8    *And I think that's pretty clear to me.*

9    And I don't know if the record will bear me out on that, somebody who's not here
     and not seeing what he's doing, but that's specifically what I believe that he's doing based
     on everything I've seen.
10

11   1 RT 8-9, emphasis added.

12   Nevertheless, the court stated it would bring petitioner to the courtroom, and tell him he

13   could remain, but that he would be expected to be quiet. Petitioner was brought to the courtroom,

14   and the court explained that he could remain as long as he was quiet and did not interrupt the

15   proceedings until he exercised his right to testify. The court warned that if petitioner did interrupt

16   the proceedings, he would be removed. 1 RT 17. Petitioner responded, "No, I never entered a plea

17   at my arraignment, so I shouldn't even be here. No, so I don't want to be here because my

18   constitutional rights are being violated. And this Court has constantly violated my constitutional

19   rights because, as I said before, and it could not be interpreted, a plea was never established or

20   entered on March 22nd, 2005." 1 RT 18. Petitioner again complained that he wanted the transcripts

21   of the arraignment and his attorney lied and told him that they did not exist. Petitioner asserted, "So

22   I don't think that it would be fair for me to be at trial, knowing that a plea hasn't been entered. So

23   I remove myself." Petitioner then left the courtroom. 1 RT 18.

24   The trial court found that petitioner voluntarily waived his right to be present at trial, and

25   that it was honoring the request since it believed petitioner would be disruptive. 1 RT 18-19. When

26   the jury reconvened, the court told the jury that petitioner chose not to be present at trial, and

27   admonished them not to speculate why petitioner so chose or to consider it in any way. 1 RT 20.

28

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-
3707 CRB

16

1  During the testimony of Alameda County Sheriff's Detective Ed Chicoine, petitioner was

2  briefly brought into the courtroom for purposes of permitting Chicoine to identify him as the person

3  he talked to at the house next door to the one they initially though was 6235 Avenal. 1 RT 64-65.

4  As soon as petitioner entered the courtroom, he said in front of the jury, "I said I wasn't supposed

5  to have a trial because I never entered a plea.  I never entered a plea.  You're violating my

6  constitutional rights.  This Court's – no disrespect to the jurors – but this, I never entered a plea at

7  my arraignment and you guys still taking me to trial.  You're violating my constitutional rights." 1

8  RT 64.

9  The next morning, before the jurors arrived, the court brought petitioner into the courtroom

10  and asked if he wanted to be present that day at the proceedings.  Petitioner responded by

11  complaining that he had not been present during jury selection, and that he had a constitutional right

12  to be present during such proceedings. 1 RT 121.  The court again asked petitioner if he wished to

13  be present at trial. Instead of answering, petitioner responded that they had let him in the courtroom

14  the previous day for about 10 seconds to let someone identify him.  Petitioner asserted that he did

15  not know the person identifying him, and that they were "trying to make it look like that I was

16  present in court during trial but I wasn't.  I don't even know what – who testified against me. I don't

17  know what questions were asked during cross-examination." 1 RT 121-122.

18  The trial court asked petitioner several more times if he wanted to be present for the

19  proceedings that day, and if so, if he would assure the court he would not be disruptive.  Petitioner

20  continued to argue that he had not entered a plea, that he was being railroaded to satisfy Sheriff

21  Plummer, and that he was never disruptive.  Petitioner denied he waived his right to be present the

22  previous day, but then stated he did not want to be present in court because he never entered a plea.

23  1 RT 122-125.

24  Finally, the court gave petitioner "one more chance to answer, and I'm not going to play

25  games with you." Petitioner responded, "I'm not playing games. I shouldn't be at trial. A plea was

26  never entered. I'm trying to establish a fact." 1 RT 125.  The trial court stated for the record:

27  The record will reflect that the defendant apparently refuses to answer, and *it's all
part of the game playing that's been going on for days now.*

28

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-
3707 CRB

17

1         In the absence of a commitment by the defendant that he will not interrupt court
proceedings and be disruptive, then I'm going to continue to exclude him from the
2   courtroom.

3 1 RT 125, emphasis added. At that point petitioner stated, "I'm being deprived of my right of

4 testifying. I'm being deprived of my right of testifying. I have a right, a constitutional right to

5 testify. All I ask is that – I'm asking this Court when was a plea established and entered? Why can't

6 this Court answer my question?" 1 RT 125. Petitioner was taken out of the courtroom. 1 RT 125.

7         After the prosecution rested, defense counsel noted for the record that he had advised

8 petitioner of his Fifth Amendment rights, and advised him not to testify. 1 RT 183. Defense counsel

9 wanted to talk to petitioner in the courtroom, because he expected if he went upstairs to see

10 petitioner, petitioner would refuse to see him. 1 RT 186. When petitioner was brought into the

11 courtroom, he continued to complain that counsel was not giving him the transcripts from the

12 arraignment, and that he never entered a plea. He told counsel, "I don't see nothing funny. You

13 trying to play with my life. You're not my attorney." The court tried to talk to petitioner, but

14 petitioner continued to talk, ignoring the court. 1 RT 186-187.

15         Defense counsel finally stated, "I think he's waiving his right to testify." Petitioner denied

16 he was waiving this right. "Put in my appeal. Put in my appeal. And I want it on court record I'm

17 being deprived of my right to taking the stand. I'm being deprived of my right of testifying, taking

18 the stand." 1 RT 187. The court asked petitioner a couple of times if he wanted to testify, but

19 petitioner continued with all his previous complaints, and yelled that the judge was "crooked and

20 corrupted" taking him to trial, despite the fact he had not entered a plea, to please his "comrades"

21 Sheriff Plummer and Supervisor Haggerty. The court had petitioner removed from the courtroom,

22 noting that petitioner talked nonstop. 1 RT 187-189.

23         The trial court pointed out that petitioner had said that he wanted to and intended to testify.

24 Defense counsel explained that it was his position and advice that petitioner not testify. The trial

25 court responded:

26         All right. And I know that. I'm bringing that up now in fairness to you, because I
know that you haven't been able to get a word in edgewise on the record either while he's
27 been in court, so we're going to have to do this when he's not in court.

28

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-
3707 CRB

18

1    Here's what I propose to do. I'm caught between a proverbial rock and a hard place. I keep excluding him from the courtroom, other than yesterday when he decided he didn't
2    want to be in the courtroom. I keep having to exclude him from the courtroom for loud, disruptive, disrespectful behavior, which was evidenced here.

3
4    The record should reflect that he was yelling rather than just talking most of the time while he was out here, and we couldn't, nobody could get a word in edgewise. But at the
5    same time, he insists that he wants to testify, that he has a right to testify. And I believe that I don't think that anybody would disagree with the statement that Defense counsel is
6    not really in a position to prevent him from testifying when he insists that he wishes to testify. It's his right after all.

7    1 RT 189-190.

8    Defense counsel stated that it was not clear that petitioner wanted to testify, because it was

9    petitioner's position that the trial was an illegal proceeding. The court proposed to have petitioner

10   on the witness stand when the jury returned. If petitioner refused to take the stand, then he could not

11   accuse the court of not giving him a chance to testify; if petitioner got on the stand and engaged in

12   disruptive, disrespectful behavior, the court would not allow it to go on very long. 1 RT 190-191.

13   The court explained:

14   I think that what Mr. Crump does is *he puts on a show the moment he walks into the courtroom. When he's not in the courtroom, he's not putting on a show.*

15
16   And I'm going to consult with my bailiff as to whether he's willing to communicate to Mr. Crump just what I've said, that I'm going to bring him in at 1:30 and give him a
17   chance to testify. How he acts, he's got to decide how he's going to act.

18   1 RT 191-192, emphasis added.

19   Before the jurors returned, the trial court had petitioner sit in the witness stand. The court

20   explained that petitioner had made it clear he intended to testify, and that the court was going to

21   ensure he had that opportunity. The court warned him that if instead of testifying, he started making

22   speeches and was disruptive and reiterated all the complaints of the past, the court would put a stop

23   to it. The trial court concluded, "I'm just making the point that I just want you to behave as much

24   as possible and offer evidence to this jury that's relevant to the charges here. *And I basically don't*

25   *want you to 'clown' them. And I know what you told my bailiff, that that's your intention.* So I'm

26   going to be watching you closely." 1 RT 193, emphasis added.

27   After the jury returned, defense counsel called petitioner as his witness. However,

28

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-3707 CRB

19

1   whenever counsel asked a question, petitioner just remained silent, refusing to respond. 1 RT 194-

2   195. After a few questions in this manner, defense counsel stated he had no other questions. 1 RT

3   195. The court excused the jury, and asked petitioner if he wished to remain in court. At first

4   petitioner said yes. However, when the court asked if it could count on him not to interrupt,

5   petitioner responded, "I, I would prefer to leave because I never entered a plea at my arraignment,

6   and I was never given the opportunity to be in trial for jury selection." 1 RT 196. Petitioner then

7   launched into his usual complaints about his rights being violated, and the case being set up against

8   him. The court told petitioner everything was preserved on the record, and the only question was

9   whether he wished to remain in the courtroom. 1 RT 196-197. Petitioner replied, "The question is

10  that why was I denied the right to – for – I wasn't available for jury selection but I had a

11  constitutional right to be available for jury selection. [Defense counsel] selected the jurors without

12  my presence in court." 1 RT 197.

13         The court concluded that petitioner could stay. 1 RT 197. Petitioner then apparently told

14  the bailiff he wanted to leave. The court asked petitioner if he wanted to leave and petitioner

15  responded he was not getting a fair trial. "That's why I want to leave. . . . It's set up for me to lose

16  the case. As not to be repetitive, I requested the transcripts at my arraignment." 1 RT 197. After

17  further questioning, petitioner stated that he wanted to leave, so the court excused him. 1 RT 197-

18  198. Defense counsel summarized for the record, "Again, my client has elected to leave because he

19  does not believe that this Court has proper jurisdiction over him because he never consented to a plea

20  of not guilty in the first place." 1 RT 198.

21         On the day for jury instructions and argument, the court again asked petitioner if he wanted

22  to be present for the proceedings. Petitioner replied, "I was informed when jury selection was taking

23  place, I shouldn't be present during jury selection. So since I wasn't present during jury selection

24  and you didn't advise me that it was important for me to be present during jury selection, I don't see

25  any need for me to be in here." 2 RT 209. The court asked if petitioner was saying he preferred not

26  to be in the courtroom. Petitioner responded, "No. I don't want to be in here. I'm not getting a fair

27  trial. Like I said before, . . . I didn't get the transcripts for the arraignments and – I never got those.

28

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-3707 CRB

20

1   And, also, I just want to say on the court record there was not one African-American on the jury, and

2   I had wanted to request to have at least one black person on the jury; so I don't even know what

3   questions the attorney asked, I don't know what questions the D.A. asked of the jurors. I never had

4   a chance to meet the jurors." 2 RT 209-210.   Petitioner further complained he did not know how

5   many witnesses there were, or what was said. "I was deprived of all of that, so why would I want

6   to continue to be present in court when I missed at least 90 percent of the trial activities? I wasn't

7   even present during the whole trial. And then you made a big excuse that I'm being disruptive and

8   overtalking you, and I wasn't being disruptive and overtalking you. I just asked for the transcript

9   of the arraignments." 2 RT 210-211.

10          When the jury reached a verdict, the court once again asked petitioner if he wanted to be

11  present. Petitioner stated he did not, "What I wish – I know it's going to be a guilty verdict, so I

12  would rather just come back for sentencing; but I also want to make sure that my case is going to

13  be appealed. And also, relative to what you said earlier about waiving my rights, I just want to make

14  sure that my rights were waived just for today on June 27, 2005; but I did not waive my rights in

15  previous times or previous before June 27th of 2005." 2 RT 282. The court clarified that petitioner

16  did in fact know he had the right to be present, but that he did not want to be present. 2 RT 282-283.

17          **4.  Sentencing Hearing**

18          The sentencing hearing was held on August 5, 2005. At the beginning, the court noted it

19  had received some items from petitioner, including a motion for stay of execution of judgment.

20  Petitioner told the court that he had sent three copies of the motion. The court further noted that

21  petitioner wrote a statement on the envelope, but was not sure when it was postmarked. Petitioner

22  informed the court that he sent it out on July 18. 8/05/05 RT 1[5/]. The court stated it also received

23  a letter from petitioner postmarked July 22 repeating a lot of what was in the first motion, including

24  petitioner's wish that he not be placed on probation, because he believed if he did so, he could not

25  ──────────────────────────────────────────

26          5. The transcript for the sentencing hearing is with the transcripts of the June 15, 2005,
    proceedings, which is reported at pages 1 through 18. Unfortunately, our copy of the sentencing
27  hearing transcript beginning on the page after 18 is not numbered. We have numbered it sequentially
    starting with page 1.
28

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-3707 CRB

21

1    appeal. The court explained to petitioner that he had the right to appeal no matter what sentence the

2    court imposed. The court also explained that petitioner would have a right to a free transcript of the

3    proceedings. 8/05/05 RT 1-2. Petitioner emphasized that he wanted his case to be appealed, that

4    he knew his rights were violated, and he wanted it brought to the appellate court's attention. 8/05/05

5    RT 2-3. Defense counsel assured petitioner he had prepared a notice of appeal. 8/05/05 RT 3.

6         Petitioner did not interrupt until the prosecutor stated that in his eleven years as a

7    prosecutor, "this has probably been one of the most disruptive and disrespectful defendants I've ever

8    had to deal with." 8/05/05 RT 4. Petitioner then stated he was not being disruptive, that they were

9    not doing their jobs, that they set him up, had people lying in court, had no blacks on the jury, and

10   excluded him from jury selection. 8/05/05 RT 4. The court told petitioner that he would have an

11   opportunity to address the court, then turned back to the prosecutor. When the prosecutor stated that

12   petitioner used profanity in addressing the court, petitioner got upset and denied it, complained again

13   that there were no blacks on the jury, that the case was rigged in order to satisfy Sheriff Plummer and

14   Supervisor Haggerty. 8/05/05 RT 5. When the prosecutor stated petitioner sent the emails,

15   petitioner denied it, and the court then had him excluded. 8/05/05 RT 6.

16        Defense counsel urged the court not to sentence petitioner based on his disruptive

17   behavior, but rather on the crime. 8/05/05 RT 7. In arguing for probation, counsel stated that

18   petitioner "is a man who strenuously advocates in a rather bizarre fashion for his rights to be

19   respected. . . . *He certainly seems to cooperate with your orders when you ask him to leave. He gets*

20   *along well with the deputies, as far as I can see. He just doesn't like to talk to people. He wants his*

21   *rights respected,* so I think the court, in terms of he's eligible for probation. . . ." 8/05/05 RT 8,

22   emphasis added.

23        Counsel argued that the email was bizarre and unrelated to petitioner's own background,

24   that the facts suggest that petitioner was merely perpetuating a cruel hoax against a neighbor, and

25   that he did not intend any violence. "There is – I think the court needs to consider, based on Mr.

26   Crump's disruptive behavior, his inability to advocate on his own behalf in that effective way

27   suggests that he does suffer from some sort of mental illness, which is – which is motivating both

28

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-3707 CRB

22

1  his behavior and perhaps the crime that occurred in this instance" and that probation was warranted

2  where petitioner would receive psychiatric treatment.  8/05/05 RT 9-10.

3         After counsel finished his comments, the court brought petitioner back into the courtroom

4  and gave him an opportunity to address sentencing.  Instead, petitioner again complained that the

5  case was rigged, and that he never got a chance to testify.  8/05/05 RT 11.  The court told petitioner

6  he was only to address sentencing, at which point petitioner claimed that the bailiff told him he

7  would get to say anything he wanted.  The court responded he could, as long as it was related to the

8  issue of what sentence he should receive.  8/05/05 RT 11-12.  Petitioner responded he did not know

9  what sentence he should receive, but that he wanted to appeal because his rights were violated.

10  8/05/05 RT 12.  The court assured petitioner that he would have an opportunity to appeal.  (8/05/05

11  RT 12-13.

12         Thereafter, the court sentenced petitioner to the aggravated three year term on count one,

13  with a consecutive term of 8 months on count two.

14  **B.    The Court Of Appeal's Ruling**

15         The Court of Appeal rejected petitioner's assertion that the trial court should have held a

16  new competency hearing:

17         Defendant contends that "when it became apparent he was unable to assist in his
   defense," the court should have ordered a competency hearing. We disagree. The record
18         supports the court's implicit and explicit findings that defendant understood the
   proceedings and was able to assist his counsel. The problem was that he did not want to.

19
        The court is required to suspend criminal proceedings and hold a competency
20  hearing, sua sponte if necessary, if there is substantial evidence of incompetence.
   (Pen.Code, § 1368; *People v. Medina* (1990) 51 Cal.3d 870, 882; *People v. Howard*
21  (1992) 1 Cal.4th 1132, 1163.)

22         "[T]he question as to what constitutes such substantial evidence in a proceeding
   under section 1368 "cannot be answered by a simple formula applicable to all situations."
23  (*People v. Laudermilk* (1967) 67 Cal.2d 272, 283.) "[A] defendant must exhibit more than
   bizarre, paranoid behavior, strange words, or a preexisting psychiatric condition that has
24  little bearing on the question of whether the defendant can assist his defense counsel."
   (*People v.. Ramos* (2004) 34 Cal.4th 494, 508; *People v. Welch* (1999) 20 Cal.4th 701,
25  742.)

26         Defendant points to his disruptive and bizarre behavior that resulted in frequent
   expulsions from the courtroom and a tenuous relationship with his attorney as evidence
27  of incompetence. But the court viewed this behavior not as displaying an inability to
   participate, but as a calculated attempt to create reversible error. The stratagem employed

28

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-
3707 CRB

23

by the defendant is not unprecedented. It has been tried before, and failed before. The record discloses that defendant vociferously argued with the court his desire to legally stand mute. But he could address the court with respect, and he demonstrated an awareness of the gravity and purpose of the proceedings. He could carry on with the judge and loudly express to the jury his contempt for the proceedings and desire for legal muteness. But the only time he physically stood mute was when he was questioned by a doctor or a lawyer. A reasonable inference that can be drawn from this record is not that defendant was incompetent, but that he was attempting through his obstreperous conduct to pressure the court into acceding to his procedural demands or to inject error into his trial. (See *People v. Stansbury, supra,* 4 Cal.4th at p. 1041; *People v. Clark* (1992) 3 Cal.4th 41, 115.) "Reviewing courts give great deference to a trial court's decision whether to hold a competency hearing. ""An appellate court is in no position to appraise a defendant's conduct in the trial court as indicating insanity, a calculated attempt to feign insanity and delay the proceedings, or sheer temper."""" (*People v. Marks* (2003) 31 Cal.4th 197, 220.) To be sure, the record shows defendant was unwilling to cooperate with defense counsel or control his behavior during court proceedings. What is lacking, however, is evidence that he was *unable* to do so, or that his lack of cooperation was caused by a mental defect or disability. We will not second guess the trial court.

Defendant's claims that the court failed to hold a competency hearing or appoint experts to evaluate his competency are incorrect. Drs. Franklin and Davenport were appointed to examine him for just this purpose. As to defendant's assertion that there was no competency hearing, the court minutes show there was a hearing on the morning of June 13, 2005, at which Judge Reardon considered defendant's request for a Penal Code section 1368 referral, considered the previous psychological reports, and ruled against him. Defense counsel was present (as were defendant and the prosecutor), and presumably able to argue his motion. The record supplies no basis for defendant's insistence that this proceeding was not a "competency hearing" and that the trial court "simply decided" defendant was competent.

Defendant further argues that, if the proceeding on June 13, 2005, was a competency hearing, changes in his subsequent behavior were sufficiently significant as to require a second competency hearing. (*People v. Kelly* (1992) 1 Cal.4th 495, 542 [after defendant has been found competent to stand trial, subsequent competency hearing is required only in the face of a substantial change of circumstances or new evidence casting serious doubt on the validity of the prior finding].) Here too, his argument fails to persuade. Although defendant's disruptive behavior appears to have escalated during the course of the proceedings, it was consistent in nature from the arraignment through sentencing. It was unnecessary for the court to suspend proceedings and hold a second competency hearing after June 13, 2005.

Exh. F at 11-13.

### C.    The State Court Ruling Was Not Contrary To Or An Unreasonable Application Of Supreme Court Precendent

A criminal defendant must be competent to be brought to trial. *Pate v. Robinson*, 383 U.S. 375, 378 (1966); *see Godinez v. Moran*, 509 U.S. 389, 396 (1993). The standard for competence to stand trial is whether the defendant has "sufficient present ability to consult with his lawyer with a

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-3707 CRB

24

1   reasonable degree of rational understanding" and has "a rational as well as factual understanding of

2   the proceedings against him." *Godinez v. Moran*, 509 U.S. at 396, quoting *Dusky v. United States*,

3   362 U.S. 402 (1960); accord *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) (defendant may not be

4   put to trial unless he "'has sufficient present ability to consult with his lawyer with a reasonable

5   degree of rational understanding . . . [and] a rational as well as factual understanding of the

6   proceedings against him"); *Drope v. Missouri*, 420 U.S. 162, 171 (1975) ("[A] person whose mental

7   condition is such that he lacks the capacity to understand the nature and object of the proceedings

8   against him, to consult with counsel, and to assist in preparing his defense may not be subjected to

9   a trial"); *Boag v. Raines*, 769 F.2d 1341, 1343 (9th Cir. 1985).

10       Due process does not require a court to order a psychiatric evaluation or conduct a

11   competency hearing unless the court has a good faith or bona fide doubt concerning the defendant's

12   competence. *Capoperdo v. Demosthenes*, 37 F.3d 504, 510 (9th Cir. 1994); *see also Davis v.*

13   *Woodford*, 384 F.3d 628, 644 (9th Cir. 2004) (only when the evidence raises a bona fide doubt about

14   the defendant's competence to stand trial must a trial judge *sua sponte* conduct an evidentiary

15   hearing, citing *Pate v. Robinson,* 383 U.S. at 385); *Burket v. Angelone*, 208 F.3d 172, 192 (4th Cir.

16   2000).  The same standard applies when, after an initial determination of competency, petitioner

17   argues that the court should have held an additional competency hearing based on subsequent events.

18   *Amaya-Ruiz v. Stewart*, 121 F.3d 486, 489-93 (9th Cir. 1997).  A good faith doubt about a

19   defendant's competence arises only if there is substantial evidence of incompetence. *See Capoperdo*

20   *v. Demosthenes*, 37 F.3d at 510. The habeas petitioner has the burden to prove that objective facts

21   known to the trial court raised a sufficient doubt to require a competency hearing. *Reynolds v.*

22   *Norris*, 86 F.3d 796, 801 (8th Cir. 1996).[6]

23

24       6.  Under California law the defendant bears the burden of establishing his incompetence
     at the hearing. *See Medina v. California*, 505 U.S. 437, 449-51 (1992) ("Once a State provides a

25   defendant access to procedures for making a competency evaluation, however, we perceive no basis
     for holding that due process further requires the State to assume the burden of vindicating the

26   defendant's constitutional right by persuading the trier of fact that the defendant is competent to

27   stand trial. . . . Consistent with our precedents, it is enough that the State affords the criminal
     defendant on whose behalf a plea of incompetence is asserted a reasonable opportunity to

28

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-
3707 CRB

25

1    A reviewing court on habeas corpus considers only information before the state trial court

2 when considering a claim that the trial court erroneously failed to hold a competency hearing. *See*

3 *Amaya-Ruiz v. Stewart*, 121 F.3d at 489; *United States v. Lewis*, 991 F.2d 524, 527 (9th Cir. 1993).

4    The Court of Appeal's determination that the record supported the trial court's implicit and

5 explicit finding that petitioner understood the proceeding and was able to assist his counsel, that the

6 trial court did in fact hold a competency hearing and reasonably found petitioner competent, and that

7 there was no substantial evidence of a change in petitioner's incompetency during trial to require a

8 second competency hearing is supported by the record. The state court's determination that petitioner

9 was competent constitutes a factual finding that is presumed correct and that petitioner has not

10 rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Maggio v. Fulford*, 462 U.S.

11 111, 117 (1983) (per curiam); *Dennis v. Budge*, 378 F.3d 880, 891 (9th Cir. 2004); *Moran v.*

12 *Godinez*, 57 F.3d 690, 696 (9th Cir. 1994). The state court's determination that the evidence did not

13 require an additional competency hearing after the initial hearing was not an unreasonable

14 determination of the facts. 28 U.S.C. § 2254(d)(2); *Davis v. Woodford*, 384 F.3d 628, 644 (9th Cir.

15 2004); *Torres v. Prunty*, 223 F.3d 1103 (9th Cir. 2000).

16    The record shows that the trial court did in fact appoint alienists to examine petitioner for

17 competency to stand trial after the complaint was filed. See Exh. I (Reports of Dr. Franklin and Dr.

18 Davenport). As petitioner did at points during trial, he simply refused to talk to the doctors, and

19 remained mute when each doctor tried to examine him. The court minutes shows that there was a

20 hearing before Judge Reardon on June 13, 2005, in which the court denied a request to again refer

21 petitioner to alienists pursuant to Penal Code section 1368, but in which the court used previous

22 reports (presumably the above reports) and determined that petitioner was competent to stand trial.

23 CT 88.[7/]

24 

---

25 demonstrate that he is not competent to stand trial.").

26    7. Dr. Franklin's report indicated that a hearing was scheduled for October 22, 2004. As

27 previously stated, the record was silent about whether there was a competency hearing on that date
or another date prior to the arraignment on March 22, 2005.

28 

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-
3707 CRB

1    To the extent petitioner is asserting that his behavior was different after the June 13, 2005,

2  hearing requiring a second competency hearing, the state court reasonably found no grounds because

3  petitioner's conduct "was consistent in nature from the arraignment through sentencing." Exh. F at

4  13. Petitioner's behavior before and after the hearing was consistent. At his arraignment on March

5  22, 2005, petitioner told the court that he wanted the record to reflect that he never entered a plea so

6  he could "put in for my appeal" and that he was being set up to lose his case. Petitioner was then

7  removed from the courtroom. 3/22/05 RT 1.

8    At the preliminary hearing on April 5, 2005, petitioner also complained that he never

9  agreed to enter a plea, that he requested but never received transcripts from the March 22

10  arraignment, and that he did not give up any of his constitutional rights. CT 8-9. Petitioner stated

11  that he wanted to represent himself, but then was seen crumbling up the waiver form and throwing

12  it on the ground. He threatened to inform the jurors how "crooked and corrupted" the court system

13  was, that he was being set up to lose his case, and he planned to appeal. CT 13-14. He interrupted

14  the preliminary hearing witness numerous times. CT 36, 38, 46-47.

15    Eventually, the trial court excluded petitioner from the preliminary hearing. "This court

16  has repeatedly admonished the defendant to not disrupt the proceedings, and he has continued to do

17  so despite the numerous chances this court has given him. He's used profanity and has continued

18  to disrupt the proceedings despite the warnings by the Court, and this court feels it has no choice but

19  to remove the defendant from the proceedings to allow the proceedings to proceed." CT 42-43.

20  After he was removed, petitioner started banging on the door and yelling. CT 48.

21    Petitioner's behavior after he was found competent on June 13 was no different than the

22  above. Accordingly, no additional competency hearing was required. *Amaya-Ruiz v. Stewart*, 121

23  F.3d at 491 (where defendant was originally found competent after evaluations suggested he was

24  malingering and had "chosen a strategy of noncooperation," evidence that he subsequently spoke out

25  loud in court, refused to change out of jail clothing, and tried to hang himself after learning that his

26  brother had died did not require second competency hearing; "while his behavior may not have been

27  rational at times, his behavior was not so extreme as to require an additional evaluation"); *see Davis*

28

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-3707 CRB

27

1    *v. Woodford*, 384 F.3d at 645-646 (defendant's "decision not to wear civilian clothes and to remain

2    in the doorway of the courtroom rather than facing the prosecution witnesses may seem an

3    unreasonable decision for someone on trial for his life.  He was evidently aware of the risks of his

4    behavior, however, and rationally weighed those risks against the likelihood that, if he remained in

5    the courtroom, he would do something to increase further his chances of being sentenced to death.

6    . . .We conclude that the trial judge did not err in proceeding without a competency hearing at the

7    beginning of the penalty phase.").  Indeed, on July 13, 2005, the trial court noted that it had been

8    informed that petitioner had been disruptive, loud, and yelling at the hearing on his competency itself

9    earlier that day.  6/13/05 RT 14.  The trial court was not required to hold a second competency

10   hearing.

11        The record supports the trial court's conclusion that petitioner was "playing games" and

12   that his behavior was a deliberate attempt to inject error into the case.  First, he refused to enter a

13   plea at his arraignment after the complaint was filed, and again after the information was filed.  He

14   seemed to think that if he simply did not enter a plea, no further action could be taken in the case.

15   Whatever his misconception, it shows a deliberate attempt to manipulate the proceedings, not that

16   he was incompetent.

17        Because the crimes were committed against Alameda County officials, petitioner appeared

18   convinced that they had influence on the courts and attorneys in Alameda County and therefore the

19   case was "fixed" against him.  See RT 6/13/05 18 (trial counsel explains that petitioner did not

20   believe he could get a fair trial in Alameda County, because the victims were elected officials of that

21   county).  He was convinced he would be found guilty and therefore fixated on appealing the case.

22   Petitioner had previously been convicted of assault with a deadly weapon, and he apparently

23   succeeded in getting that conviction overturned on appeal.  See 1 RT 8-9; CT 211; see Exh. J, Court

24   of Appeal disposition summary for *People v. Crump*, A080391.  He seemed to believe that like the

25   prior case, he could get this conviction reversed and the charges dismissed.  See CT 211.

26        Petitioner also took actions that appear to be deliberate attempts to insert reversible errors.

27   He demonstrated that he could be cooperative and responsive when he so desired, but that he could

28

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-
3707 CRB

28

1   be disruptive and non-responsive when it suited his needs. At the pretrial conference on June 13,

2   2005, he answered to his name, listened to the court, and told the court he had some questions. When

3   the court asked about whether he had civilian clothes, petitioner stated, "Before I answer that, there's

4   some questions I have to ask. Not to be disrespectful, sir. *Is this on the court record?*" 6/13/05 RT

5   2, emphasis added. When the court told petitioner it was on the record, petitioner then launched into

6   his complaint about the arraignment on March 22, and stated that he wanted the record to reflect that

7   he never entered a plea. 6/13/05 RT 2. Petitioner asserted that he should not have had the

8   preliminary hearing, his rights were being violated, and that he was going to bring this up before the

9   jury. 6/13/05 RT 3. Petitioner did in fact make such comments before the jury. When the trial court

10  brought petitioner back after excluding him, petitioner repeated that if he were permitted to stay in

11  the courtroom, he would tell the jury the same things.

12          Eventually, petitioner himself chose not to stay in the courtroom during the trial. Even

13  though the court gave petitioner numerous opportunities to be present at the proceedings, petitioner

14  refused to assure the court he would not be disruptive, but would then assert that his constitutional

15  right to be present at those proceedings was being violated. The trial court observed that petitioner

16  was "playing games" with the court, and that he was doing so "in significant part intentionally to

17  create an appellate issue." The Court further observed that petitioner had previously had a

18  conviction reversed on appeal, and the court was convinced petitioner was not "dumb and he's not

19  crazy. I think this is calculated to create issues here. And I think that his playing games with the

20  plea is all part of that. And I think that's pretty clear to me." 1 RT 8-9; see also 1 RT 125 (court

21  again gives petitioner an opportunity to return to the courtroom and petitioner states he did not want

22  to be present because he never entered a plea and he was being deprived of his constitutional rights;

23  the court asked that the record reflect "that the defendant apparently refuses to answer, and it's all

24  part of the game playing that's been going on for days now").

25          A further example of petitioner's manipulation involved his insistence on testifying.

26  Petitioner demanded numerous times at various proceedings to exercise his right to testify. He told

27  the jury that he was going to testify, and told the court several times that he had a constitutional right

28

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-3707 CRB

1  to testify and he intended to do so, despite the fact that defense counsel advised against it. 6/15/05

2  RT 1, 12-15; 6/20/05 RT 43, 49; 1 RT 125, 183, 187. The court made sure that petitioner had the

3  opportunity to testify. It warned petitioner, however, that if instead of testifying, he started making

4  speeches and was disruptive and reiterated all the complaints of the past, the trial court would put

5  a stop to it. The trial court further stated, "I'm just making the point that I just want you to behave

6  as much as possible and offer evidence to this jury that's relevant to the charges here. *And I*

7  *basically don't want you to 'clown' them. And I know what you told my bailiff, that that's your*

8  *intention.* So I'm going to be watching you closely." 1 RT 193, emphasis added.

9        When petitioner got on the stand, he simply sat there silently, refusing to answer any of

10  the questions defense counsel asked. Thus, petitioner knew exactly what he was doing; he told the

11  bailiff before he entered the courtroom of his intent to be disruptive. However, the trial court learned

12  of this and warned petitioner not to carry it out; thereafter, petitioner took the stand and sat mute.

13  This comported with the court's earlier observation, "I think that what Mr. Crump does is he puts

14  on a show the moment he walks into the courtroom. When he's not in the courtroom, he's not

15  putting on a show." 1 RT 191-92. Even defense counsel pointed out at the sentencing hearing that

16  petitioner "certainly seems to cooperate with [the court] orders when you ask him to leave. He gets

17  along well with the deputies, as far as I can see. He just doesn't like to talk to people. He wants his

18  rights respected . . ." 8/05/05 RT 8.

19        Moreover, after refusing to answer any questions when he was on the stand, petitioner later

20  complained that his right to testify was violated. 8/05/05 RT 11. On other occasions, petitioner

21  engaged in similar behavior. Although the court went out of its way to have petitioner remain in the

22  courtroom, petitioner ignored the court's request that he assure it he would not be disruptive, then

23  later complained that his constitutional right to be present at those proceedings was violated. When

24  it was pointed out that he requested not to be present at one proceeding, petitioner acknowledged that

25  he waived his right at that hearing, but not any others. 2 RT 282-283 ("I know it's going to be a

26  guilty verdict, so I would rather just come back for sentencing; but I also want to make sure that my

27  case is going to be appealed. And also, relative to what you said earlier about waiving my rights,

28

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-3707 CRB

30

1  I just want to make sure that my rights were waived just for today on June 27, 2005; but I did not

2  waive my rights in previous times or previous before June 27th of 2005.").

3        Petitioner also demonstrated that he was fully aware of his rights and possible appellate

4  issues when he complained several times that there were no Blacks on his jury and complained he

5  was not present during jury selection.[8] 2 RT 209-211; 8/05/05 RT 4-5.

6        In sum, the record shows that petitioner understood the nature of the criminal proceedings

7  all too well.  He was manipulative and understood what he was doing.  He was certainly angry,

8  repetitive, and sometimes got carried away with his claims, but that does not mean he was

9  incompetent to stand trial.  "[N]either low intelligence, mental deficiency, nor bizarre, volatile, and

10  irrational behavior can necessarily be equated with mental incompetence to stand trial."  *Lyons v.*

11  *Luebbers*, 403 F.3d 585,  593 (8th Cir. 2005), citing *Vogt v. United States*, 88 F.3d 587, 591 (8th

12  Cir.1996); *see also   Boag v. Raines*, 769 F.2d at 1343 (evidence that defendant had repeatedly

13  attempted suicide, had numerous head injuries, had a history of bizarre behavior and alcoholism, and

14  had prompted the trial court to state that he required "intensive psychiatric treatment," did not raise

15  a substantial doubt as to his competency); *De Kaplany v. Enomoto*, 540 F.2d 975, 983-985 (9th Cir.

16  1976) (evidence of outbursts at trial, the bizarre nature of the crime, and psychiatric testimony

17  characterizing the defendant as "severely disturbed" and suffering from paranoid schizophrenia, did

18  not raise bona fide doubt as to defendant's competence).

19        The trial court here noted numerous times that it had observed petitioner and that petitioner

20  was merely playing a game with the court.  6/15/05 RT 11 (defense counsel states that petitioner

21  understood the court was addressing him and what the court was saying, and the court responds, "I

22  know Mr. Crump understands exactly what I'm saying. He's made that clear to me."); 1 RT 8-9

23  (court believes petitioner was playing games, that he was acting  in significant part intentionally to

24  create an appellate issue, that he was not crazy but instead acted in a calculating manner to create

25  issues).  The trial court here specifically stated that it was "convinced [petitioner is] not dumb and

26

27      8. Defense counsel made a *Batson/Wheeler* motion (*Batson v. Kentucky*, 476 U.S. 79 (1986);
   *People v. Wheeler*, 22 Cal.3d 258 (1978).  1 RT 9-12.

28

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-3707 CRB

31

1    he's not crazy.  I think this is calculated to create issues here.  And I think that his [*sic*] playing

2    games with the plea is all part of that.  And I think that's pretty clear to me.  [¶] *And I don't know*

3    *if the record will bear me out on that, somebody who's not here and not seeing what he's doing, but*

4    *that's specifically what I believe that he's doing based on everything I've seen.*"  1 RT 8-9, emphasis

5    added.

6           Given the previous finding of competency and the record supporting the trial and appellate

7    court's findings, the state court findings are either presumed correct or a reasonable interpretation

8    of the facts.  The petition must be denied.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-3707 CRB

32

1

## CONCLUSION

2      WHEREFORE, respondent respectfully submits that the order to show cause be

3 discharged, the petition for writ of habeas corpus be denied, and this action be dismissed.

4      Dated: April 28, 2008

5                        Respectfully submitted,

6                        EDMUND G. BROWN JR.
                       Attorney General of the State of California

7                        DANE R. GILLETTE
8                        Chief Assistant Attorney General

                       GERALD A. ENGLER
9                        Senior Assistant Attorney General

10                        PEGGY S. RUFFRA
                       Supervising Deputy Attorney General

11

12                        /s/ Sharon G. Birenbaum
13                        SHARON G. BIRENBAUM
                       Deputy Attorney General

14                        Attorneys for Respondent

15 40246470.wpd
    SF2007403128
16

17

18

19

20

21

22

23

24

25

26

27

28

Memo. of Points and Authorities in Opposition to Petition for Writ of Habeas Corpus - *Crump v. Alameda County* - C 07-3707 CRB