1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

STEPHEN CRUMP,

No. C 07-3707 CRB (PR)

10

        Petitioner,

**ORDER DENYING PETITION FOR**
**WRIT OF HABEAS CORPUS**

11

  v.

12

ALAMEDA COUNTY SUPERIOR COURT,

13

        Respondent.
_____/

14
15

      Petitioner was convicted by a jury in the Superior Court of the State of California in and

16

for the County of Alameda of two counts of making criminal threats.  On August 5, 2005 the

17

court sentenced Petitioner to three years and eight months in state prison.  The California Court

18

of Appeal affirmed the conviction, but remanded the case for re-sentencing.  The Supreme Court

19

of California denied review.

20

      Petitioner then filed the instant federal petition for a writ of habeas corpus under 28

21

U.S.C. § 2254, claiming that he was denied due process when the trial court failed to order a

22

competency hearing.  Per order filed on November 16, 2007, the court found that the petition,

23

liberally construed, stated a cognizable claim under § 2254 and ordered Respondent to show

24

cause why a writ of habeas corpus should not be granted.  Respondent filed an answer to the

25

order to show cause, and Petitioner filed a traverse.

26

/

27

/

28

/

1

**BACKGROUND**

The California Court of Appeal summarized the pertinent procedural background of the case as follows:

Psychological Evaluations

Shortly after Petitioner was charged with two counts of making criminal threats, two psychological reports were prepared pursuant to California Penal Code section 1368. People v. Crump, No. A111031, 2007 WL 594469, at *1 (Cal. Ct. App. Feb. 27, 2007). Both stated that Petitioner had remained completely silent during his interview. Dr. Davenport noted that he also interviewed a deputy in Petitioner's housing unit who said that Petitioner did not speak to other inmates but did not appear to be suffering from hallucinations or delusions. Dr. Franklin reported that Petitioner was able to speak when necessary, but remained "selectively mute." Id. Dr. Franklin noted that possible reasons for Petitioner's behavior could be "an underlying mental disorder such as paranoid schizophrenia; anger and willful refusal to cooperate; or a malingering psychosis." Id. Due to Petitioner's silence, neither doctor was able to make an evaluation regarding Petitioner's competency. Id.

Arraignment

At the arraignment, Petitioner interrupted his court-appointed counsel when a plea of not guilty was entered and stated: "No, I never entered a plea. You and the judge and the DA are setting me up for losing the case. I never entered a plea, and I want the record to reflect that so I can put in for my appeal . . . . I never entered a plea. I want the record to reflect that because my constitutional rights are being violated." Id. Petitioner was taken out of the courtroom and a not guilty plea was entered on his behalf. Id.

Preliminary Hearing

During the preliminary hearing, Petitioner "repeatedly insisted he never spoke with counsel; never agreed to a not guilty plea; that the proceeding was unconstitutional; that he wanted transcripts from [his arraignment]; and that he would appeal. He also insisted he was not, and had never been found, incompetent." Id. Petitioner then stated that he did not want to be represented by an attorney "because he did not trust the judges, the district attorneys, or the

2

1  public defenders because they worked together to get African-Americans convicted." Id. at *2.

2  He said that he wanted to represent himself so he could lose his case and then appeal. However,

3  when he was provided with a Faretta form, Petitioner crumpled it up and the court ruled that

4  Petitioner waived the right to represent himself. Furthermore, Petitioner remained mute when

5  the court asked him why Mr. McDougall, his counsel, should not represent him. Id.

6  Petitioner interrupted the proceedings several times while the investigating officer

7  testified. Petitioner was excluded from the courtroom, and the court explained that it had asked

8  Petitioner repeatedly to cooperate and that Petitioner had continued to interrupt the proceedings

9  and use profanity. After being excluded from the courtroom, Petitioner banged on the holding

10  cell door and called, "it's all set up for me to lose. If I was supposed to be on the porch, why

11  didn't I get arrested at that time? Who is Cliff? Where is my name at? I don't want you

12  representing me." Id.

13  Pretrial Conference

14  On June 13, 2005 Judge Thomas Reardon presided over a hearing attended by Petitioner.

15  There is no reporter's transcript for this hearing, but the clerk's handwritten notes on the minutes

16  state, "Defense counsel's request for 1368 PC referral is denied. Previous 1368 PC reports are

17  used by the court. The court finds the [defendant] competent. Matter assigned to Judge

18  Rolefson, D-10, for [jury trial]." Id.

19  At the pretrial conference before Judge Rolefson, Petitioner insisted that he planned to

20  wear his jail clothes at trial, despite the fact that both his counsel and the court advised against it.

21  Id. at *2-3. Petitioner continued to interrupt the proceedings and state that he had never entered

22  a not guilty plea; that his counsel was a liar; that his constitutional rights were being violated;

23  and that he wanted his arraignment transcripts. Id.

24  Petitioner then asked if he could take the stand, and stated that his counsel had lied about

25  Petitioner having a mental problem and that he was never given his court transcripts. He said, "I

26  want the First Appeal District Court, the California State Supreme Court, the Ninth Circuit Court

27  of Appeals, if necessary, the U.S. Supreme Court to know that I never entered a plea at my

28  arraignment." Id. at *3. He also insisted on wearing his jail clothes "because it's already set up

3

1  for me to lose, so I don't have nothing to lose, but to put in my appeal, and I will be appealing

2  my case." Id.

3       When the court expressed concern about Petitioner's behavior at previous hearings,

4  Petitioner stated that he could "conduct myself in a courtroom to the best of my ability.  I don't

5  have no reason to get loud or to get mad . . . .  It's just that I don't like it when an attorney and

6  the courts is trying to play me for a fool, and try to play with my intelligence when I just asked

7  for certain things." Id.  Petitioner claimed again that his attorney was not acting on his behalf.

8  The judge told Petitioner that if he continued to interrupt the proceedings he would be excluded

9  from the courtroom.  At the end of the hearing, Petitioner expressed gratitude toward the court

10  for listening to his grievances and said "If I sound loud, I do apologize for that, but due to the

11  fact of what took place from the arraignment up to now, I had to say what I had to say . . . .  So if

12  I disrespect you in any way, I apologize, because that's not my intent." Id. at *4.

13  Pretrial Motions

14       During pretrial motions, Petitioner refused to sit next to his counsel, stated that he did not

15  have a mental problem and that he wanted to take the stand at trial, and remained silent when the

16  court asked him about his insistence on wearing his jail clothes. Id.  Petitioner's counsel noted

17  that he thought Petitioner understood the judge's order to have his shackles removed, and the

18  court concurred, "I know [Petitioner] understands exactly what I'm saying.  He's made that clear

19  to me." Id.  When the court told Petitioner he would be able to testify, Petitioner claimed that his

20  attorney did not want him to take the stand because "he did not want the jurors to know what he

21  had to say."  Petitioner then repeatedly complained about not receiving his transcripts and stated

22  that he wanted to wear his shackles "because it would affect the jurors, and that would be

23  grounds for reversal on my appeal." Id.

24  Jury Selection

25       During jury selection, Petitioner remained mute except when the court was explaining

26  that Petitioner did not have to testify, at which point Petitioner interrupted and said that he was

27  being set up to lose his case and that he wished to be found guilty. Id.  After continued

28  interruptions, Petitioner was removed from the courtroom.  He was brought back later that day as

well as the following day, but each time he continued to interrupt, protesting that he did not enter

a not guilty plea and telling the jurors to find him guilty, and was removed.  In addressing the

problem, the court stated:

> It's a Catch-22 for me.  So I'm going to choose the lesser of two evils,
> particularly in view of his failure, his refusal to answer my questions directly here.  And,
> in my opinion, he was playing games with me.  I also believe that he is doing this in
> significant part to intentionally create an appellate issue.  We know that he's been – he's
> been to trial before.  He's been convicted in the case in this county, it went up on appeal,
> and it got reversed.  So he's seen what creating issues can do.  And I'm convinced he's
> not dumb and he's not crazy.  I think this is calculated to create issues here.  And I think
> that his playing games with the plea is all part of that.  And I think that's pretty clear to
> me.  And I don't know if the record will bear me out on that, somebody who's not here
> and not seeing what he's doing, but that's specifically what I believe that he's doing
> based on everything I've seen.

Id. at *5.

Trial

Outside the presence of the jurors, the court told Petitioner that he would only be able to

stay in the courtroom during trial if he did not interrupt the proceedings.  Id.  Petitioner

responded that it wouldn't be fair for him to be present at the trial because a plea had never been

entered, "[s]o I remove myself."  Id.  The court admonished the jurors not to speculate why

Petitioner chose not to be present.  That day, Petitioner was brought into the courtroom once to

be identified by a detective, but was removed afterwards because he immediately started

complaining and interrupting the proceedings.  Id. at *6.

Throughout the trial, the court brought Petitioner into the courtroom and asked him if he

wanted to participate.  Petitioner told the court that he wished to remain mute.  The court noted

that Petitioner "apparently refuses to answer, and it's all part of the game playing that's been

going on for days now.  In the absence of a commitment by [Petitioner] that he will not interrupt

court proceedings and be disruptive, then I'm going to continue to exclude him from the

courtroom."  Id.

Later in the trial, when asked if he wanted to testify, Petitioner complained about his

transcripts and about not being present for jury selection, called the judge "crooked and corrupt,"

and alleged that his constitutional rights were being violated.  Id.  The court removed Petitioner

from the courtroom, but allowed him to take the stand after a recess.  The court told Petitioner's

counsel that his client would have to behave:

> [Petitioner] puts on a show the moment he walks into the courtroom.  When he's not in the courtroom, he's not putting on a show.  And I'm going to consult with my bailiff as to whether he's willing to communicate to [Petitioner] just what I've said, that I'm going to bring him in at 1:30 and give him a chance to testify.  How he acts, he's got to decide how he's going to act.

Id.

Petitioner was brought back into the courtroom to testify, and the court warned him that

if he repeated his past complaints while on the stand, he would be removed.  Petitioner took the

stand, but after saying his name he remained mute and refused to answer any questions.  Id. at

*7. Outside the presence of the jurors, the court asked Petitioner if he wanted to stay in the

courtroom, and Petitioner said that "he preferred to leave because he never entered a plea or was

given the opportunity to attend the jury selection, and was not getting a fair trial."   Id.

The court repeatedly asked Petitioner if he wanted to be present for jury instructions,

argument, and the reading of the verdict.  Petitioner said that he did not want to be present

because he wasn't getting a fair trial, then stated that he didn't have his transcripts, that there

were no African-American jurors, and that he never had a chance to meet the jurors or see what

the witnesses said at trial.  Petitioner stated that he was sure he would be found guilty, so he

chose to come back only for sentencing to make sure that the case would be appealed.  Id.

Sentencing Hearing

At the sentencing hearing, Petitioner stated that he would rather be sent to prison than put

on probation so that he could appeal the case.  Id.  The court told Petitioner that he would be able

to appeal either way.  Petitioner interrupted the prosecutor and complained that he did not have

his transcripts, that the witnesses lied, that he was not present during the trial, that there were no

African-Americans on the jury, and that he did not witness the jury selection.  Id.  Petitioner was

removed from the courtroom.  Petitioner's counsel sought probation, noting that he "certainly

seems to cooperate with your orders when you ask him to leave.  He gets along well with the

deputies, as far as I can see.  He just doesn't like to talk to people.  He wants his rights

respected."  Id.  The attorney also suggested that Petitioner may be suffering from a mental

1   illness.  Petitioner was brought back one more time, and after complaining again that the

2   proceedings were unfair, he was sentenced to state prison.  Id. at *8.

3                                                    DISCUSSION

4   A.    Standard of Review

5           This Court may entertain a petition for a writ of habeas corpus on "behalf of a person in

6   custody pursuant to the judgment of a state court only on the ground that he is in custody in

7   violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The

8   writ may not be granted with respect to any claim that was adjudicated on the merits in state

9   court unless the state court's adjudication of the claim: "(1) resulted in a decision that was

10  contrary to, or involved an unreasonable application of, clearly established Federal law, as

11  determined by the Supreme Court of the United States; or (2) resulted in a decision that was

12  based on an unreasonable determination of the facts in light of the evidence presented in the

13  State court proceeding." 28 U.S.C. § 2254(d).

14          "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state

15  court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

16  law or if the state court decides a case differently than [the] Court has on a set of materially

17  indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  "Under the

18  'reasonable application clause,' a federal habeas court may grant the writ if the state court

19  identifies the correct governing legal principle from [the] Court's decisions but unreasonably

20  applies that principle to the facts of the prisoner's case." Id. at 413.

21          "[A] federal habeas court may not issue the writ simply because the court concludes in its

22  independent judgment that the relevant state-court decision applied clearly established federal

23  law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.

24  A federal habeas court making the "unreasonable application" inquiry should be whether the

25  state court's application of clearly established federal law was "objectively unreasonable." Id. at

26  409.

27          The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is

28  in the holdings (as opposed to the dicta) of Supreme Court cases as of the time of the state court

                                                        7

1  decision.  Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).  While circuit law

2  may be "persuasive authority" for purposes of determining whether a state court decision is an

3  unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are

4  binding on the state courts and only those holdings need be "reasonably" applied.  Id.

5  B.     Claim and Analysis

6         Petitioner claims that the trial court's failure to hold a competency hearing violated his

7  due process rights because the trial court had substantial evidence that he was incompetent to

8  stand trial.  Petitioner argues that his disruptive behavior at trial, his distrust in his attorney, and

9  his alternating decisions to interrupt court proceedings or remain mute when asked questions

10 constitute proof that he was unable to assist his counsel in his own defense.

11        It is well-established that due process requires that a criminal defendant not be tried

12 unless he is competent to stand trial.  Godinez v. Moran, 509 U.S. 389, 396 (1993).  A defendant

13 is competent to stand trial if he has sufficient present ability to consult with his lawyer with a

14 reasonable degree of rational understanding and has a rational as well as factual understanding of

15 the proceedings against him.  Id.

16        The California Court of Appeal determined that Petitioner was not incompetent to stand

17 trial because he was able to assist his counsel in his defense and understood the proceedings.

18 The court explained:

19              The record supports the [trial] court's implicit and explicit findings that defendant
               understood the proceedings and was able to assist his counsel.  The problem was that he
20             did not want to.

21             . . . .

22             Defendant points to his disruptive and bizarre behavior that resulted in frequent
               expulsions from the courtroom and a tenuous relationship with his attorney as evidence
23             of incompetence.  But the court viewed this behavior not as displaying an inability to
               participate, but as a calculated attempt to create reversible error.  The stratagem employed
24             by the defendant is not unprecedented.  It has been tried before, and failed before.  The
               record discloses that defendant vociferously argued with the court his desire to legally
25             stand mute.  But he could address the court with respect, and he demonstrated an
               awareness of the gravity and purpose of the proceedings.  He could carry on with the
26             judge and loudly express to the jury his contempt for the proceedings and desire for legal
               muteness.  But the only time he physically stood mute was when he was questioned by a
27             doctor or a lawyer.  A reasonable inference that can be drawn from this record is not that
               defendant was incompetent, but that he was attempting through his obstreperous conduct
28             to pressure the court into acceding to his procedural demands or to inject error into his

                                                    8

1    trial.  (See People v. Stansbury, supra, 4 Cal.4th at p. 1041; People v. Clark (1992) 3
2    Cal.4th 41, 115). . . .  To be sure, the record shows defendant was unwilling to cooperate
     with defense counsel or control his behavior during court proceedings.  What is lacking,
3    however, is evidence that he was *unable* to do so, or that his lack of cooperation was
     caused by mental defect or disability.  We will not second guess the trial court.

4    Crump, 2007 WL 594469, at *8.

5            The California Court of Appeal reasonably determined from the trial court record that

6    Petitioner understood the proceedings and had the ability to assist his counsel, but simply chose

7    not to do so in a deliberate attempt to create reversible error.  The court's determination that

8    Petitioner was not incompetent is a factual finding that is entitled to a presumption of

9    correctness.  See 28 U.S.C. § 2254(e)(1); Maggio v. Fulford, 462 U.S. 111, 117 (1983) (per

10   curiam).  Petitioner has not rebutted this presumption with clear and convincing evidence.  See

11   28 U.S.C. § 2254(e)(1).

12           The California Court of Appeal also rejected Petitioner's claim that the trial court found

13   him competent without the benefit of a competency hearing under section 1368.  See Crump,

14   2007 WL 594469, at *9.  While there are no transcripts from the June 13, 2005 proceeding, the

15   court of appeal found that the available court minutes show that Judge Reardon considered the

16   request for a section 1368 referral, took into account the psychological reports as well as

17   Petitioner's behavior, and ruled against Petitioner.  Id.  "The record supplies no basis for

18   defendant's insistence that this proceeding was not a 'competency hearing' and that the trial

19   court 'simply decided' defendant was competent."  Id.  The court of appeal's factual finding that

20   a competency hearing took place pursuant to section 1368 is entitled to a presumption of

21   correctness that Petitioner has not rebutted by clear and convincing evidence.  See 28 U.S.C. §

22   2254(e)(1); Maggio, 462 U.S. at 117.

23           Even if the June 13, 2005 proceeding did not amount to a competency hearing, Petitioner

24   is not entitled to federal habeas relief because the evidence before the trial court was not

25   sufficient to show that Petitioner was incompetent.  It is well-established that due process

26   requires a trial court to order a psychiatric evaluation or conduct a competency hearing if the

27   court has a good faith doubt concerning the defendant's competence.  See Pate v. Robinson, 383

28   U.S. 375, 385 (1966); see also Torres v. Prunty, 223 F.3d 1103, 1107 (9th Cir. 2000) (finding

                                              9

1   that this standard is "clearly established Federal law, as determined by the Supreme Court"

2   within the meaning of 28 U.S.C. § 2254(d)(1)).  A good faith doubt about a defendant's

3   competence arises only if there is substantial evidence of incompetence.  See Cacoperdo v.

4   Demosthenes, 37 F.3d 504, 510 (9th Cir. 1994); Hernandez v. Ylst, 930 F.2d 714, 716 (9th Cir.

5   1991).

6          When considering a claim that a state trial court should have held a competency hearing,

7   a federal habeas court considers only the information that was before the state trial court.  See

8   Amaya-Ruiz v. Stewart, 121 F. 3d 486, 489 (9th Cir. 1997).  A state trial court's finding that a

9   competency hearing was not required is entitled to a presumption of correctness.  See 28 U.S.C.

10  § 2254(e)(1); Maggio, 462 U.S. at 117.

11         Courts have found sufficient evidence of incompetency in two scenarios:  (1) where the

12  defendant has a history of severe mental illness, and (2) where the defendant's behavior is

13  extremely irrational and erratic throughout the trial.  See Odle v. Woodford, 238 F.3d 1084,

14  1087-89 (9th Cir. 2001) (sufficient evidence of incompetency found where defendant had a

15  massive lobectomy followed by severe personality change and series of psychiatric

16  hospitalizations and attempted suicide while in jail); Tillery v. Eyman, 492 F.2d 1056, 1057-58

17  (9th Cir. 1974) (sufficient evidence of incompetency found where defendant displayed erratic

18  and irrational behavior throughout the course of the trial, including screaming, laughing at the

19  jury, disrobing in the courtroom, and butting his head through a glass window).

20         In the instant case, Petitioner did not assert that he has a history of severe mental illness

21  or treatment.  In fact, at trial he repeatedly denied that he had mental problems.  See Crump,

22  2007 WL 594469, at *4 (during pretrial motions, Petitioner stated "I want the record to reflect

23  that I don't have a mental problem, and I'm real capable and able to take the stand, and give my

24  testimony here at trial.").  Nor was Petitioner's behavior at trial so erratic and irrational as to

25  compel a competency hearing.  His continual disruptions, claims of constitutional rights

26  violations, complaints about the fairness of the judicial process and requests to be found guilty

27  were reasonably construed by the state courts as deliberate attempts to inject reversible error into

28  the trial, rather than evidence that Petitioner was incompetent.  Petitioner's words and actions

1    explicitly support this conclusion – he stated on multiple occasions that he wanted to be found

2    guilty for the express purpose of appealing his case.  See id. (during pretrial motions, Petitioner

3    insisted on wearing shackles "because it would affect the jurors, and that would be grounds for

4    reversal on my appeal.").  And, it is clear from the record that Petitioner was able to control

5    himself when he chose to, as evidenced by his apologies to the judge and his occasional

6    decisions to remain silent when asked questions.  The California Court of Appeal reasonably

7    found that Petitioner's behavior was neither erratic nor irrational, but rather deliberate and with a

8    distinct purpose.  See 28 U.S.C. § 2254(d).

9         Petitioner claims that, even if he was properly found competent after an initial

10   competency hearing, his subsequent behavior differed so greatly that it required a second

11   competency hearing.  Courts have found that additional evaluations are not always necessary

12   when a defendant's behavior changes during the course of the proceedings.  See Amaya-Ruiz,

13   121 F.3d at 491 (after defendant was found competent to stand trial, subsequent evidence that he

14   spoke out in court, insisted on wearing jail clothes and attempted to hang himself after learning

15   of the death of his brother did not require court to make a second competency determination.)

16   The California Court of Appeal reasonably determined that Petitioner's behavior did not change

17   significantly throughout the trial:  "Although defendant's disruptive behavior appears to have

18   escalated during the course of the proceedings, its was consistent in nature from the arraignment

19   through sentencing.  It was unnecessary for the court to suspend proceedings and hold a second

20   competency hearing after June 13, 2005."  Crump, 2007 WL 594469, at *9.  This factual finding

21   is entitled to a presumption of correctness that Petitioner has failed to rebut with clear and

22   convincing evidence.  See 28 U.S.C. § 2254(e)(1); Maggio, 462 U.S. at 117.

23        The California Court of Appeal's rejection of Petitioner's due process claims was not

24   contrary to, or was based on an unreasonable application of, clearly established Supreme Court

25   precedent.  See 28 U.S.C. § 2254(d).  Nor did it involve an unreasonable determination of the

26   facts.  Id.  Petitioner is not entitled to federal habeas relief.

27   /

28   /

11

/

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is DENIED.  The clerk shall enter judgment in favor of Respondent and close the file.

**IT IS SO ORDERED.**


Dated: November 18, 2008                                CHARLES  R. BREYER
                                                        UNITED STATES DISTRICT JUDGE